UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

EDWARDS MOVING & RIGGING, INC.,

    Plaintiff,

v.                                              Case No. 8:19-cv-1004-T-36SPF

CASEY JENKINS,
SIMS CRANE & EQUIPMENT CO.,
and SIMS HD, LLC,

    Defendants.
_____/

## **REPORT AND RECOMMENDATION**

This cause comes before the Court upon the Court's Order granting Preliminary Injunction ("Preliminary Injunction") (Doc. 38), Plaintiff Edwards Moving & Rigging, Inc.'s Motion for Order to Show Cause ("Motion") (Doc. 54), Defendants Casey Jenkins, Sims Crane & Equipment Co. and Sims HD, LLC's Response in Opposition to the Motion (Doc. 60), Plaintiff's Reply (Doc. 64), Defendants' Sur-Reply (Doc. 70), and the hearing held before the undersigned on the Motion at which the Court heard argument of counsel (Docs. 71, 77).

Having considered the Motion, responsive filings, and the argument of counsel, it is recommended, for the reasons that follow, that an order be entered holding Defendants in civil contempt for their violations of the Preliminary Injunction (Doc. 38) and awarding Plaintiff its attorneys' fees incurred in prosecuting Defendants' violations. The undersigned further recommends that, if trial in this matter results in a verdict in favor of Plaintiff on its claims to enforce the non-competition restrictive covenant contained in Defendant Casey Jenkins' ("Jenkins") employment agreement, Defendants be ordered to disgorge the profits earned from any Sims HD contracts for which a quote was furnished with Jenkins' assistance

in violation of the Preliminary Injunction and upon which contract Plaintiff also bid. It is further recommended that the non-compete period contained in Jenkins' employment agreement be extended for two (2) years from the date of the contempt finding if trial in this matter results in a verdict in favor of Plaintiff on its claims to enforce the non-competition restrictive covenant contained in Jenkins' employment agreement.

## BACKGROUND

Plaintiff is in the business of transporting, moving, and lifting over-sized components and equipment. Doc. 1 at ¶ 10. It performs heavy haul and rigging jobs across multiple industries, including power plants, automotive, construction, and more. *Id.* Plaintiff hired Jenkins as its Regional Sales Manager in August 2016. *Id.* at ¶ 12. Jenkins came to the position with no experience in the industry. *Id.* Jenkins, however, did not receive any particular training, other than on-the-job experience. Jenkins Decl., Doc. 22-1 at ¶ 10. In addition, he was not paid to attend any training classes or paid to take any online training programs. *Id.* Jenkins, as part of his employment, had access to Plaintiff's customer contacts, customer revenue, information, equipment book, and other confidential business information. Doc. 1 at ¶ 12.

Jenkins resigned from his position in August 2019 and accepted a position with Defendant Sims Crane & Equipment Co. ("Sims Crane"). *See* Jenkins Decl., Doc. 22-1 at ¶¶ 7, 12. As distinguished from Plaintiff's industry, Sims Crane is engaged in the business of providing crane and heavy equipment rental services. Fisk[1] Decl., Doc. 22-2 at ¶¶ 3-4. Sims Crane's sister company,[2] Sims HD, LLC ("Sims HD"), on the other hand, renders the same

---

[1] Alan C. Fisk is the Chief Executive Officer of Sims Crane and the CEO of Sims HD.
[2] "Sims Crane and Sims HD are separate but affiliated companies with some, but not all, overlapping ownership." Fisk Decl., Doc. 22-2 at ¶ 2.

2

services in Florida as Plaintiff, *i.e.*, heavy duty rigging and machinery moving services. Doc. 1 at ¶¶ 15-16.

Plaintiff brought this action to enforce the non-competition restrictive covenant contained in Jenkins' employment agreement (the "Agreement") and to enjoin Jenkins from working for Sims Crane and Sims HD and to enjoin Sims Crane and Sims HD from employing Jenkins for a period of two (2) years anywhere in Plaintiff's "market area."[3] *See* Doc. 1-1 at ¶ 1.A.; Doc. 7-1 at 9. Plaintiff filed a Motion for Preliminary Injunction (Doc. 7). On July 31, 2019, the Court granted Plaintiff's Motion for Preliminary Injunction in part (Doc. 38) as follows: Jenkins was enjoined from working for Sims HD through and including April 17, 2021; Sims HD was enjoined from employing Jenkins through and including April 17, 2021; Jenkins was enjoined from assisting Sims HD in the business of transporting, moving, and lifting oversized components and equipment, including the bidding or quoting process or providing logistical support, through and including April 17, 2021; this did not, however, prohibit Jenkins from bidding or quoting Sims Crane's rental equipment to Sims HD or its customers or providing logistical support for hauling Sims Crane's rental cranes or equipment (Doc. 38).

On November 25, 2019, Plaintiff filed the instant Motion (Doc. 54) alleging that Defendants violated the Preliminary Injunction when Jenkins assisted in preparing quotes for Sims HD's "transporting, moving, and lifting" business under the auspices of his position at Sims Crane. Plaintiff asserts that all of these quotes were exclusively bids for Sims HD's hauling and transportation services, not merely the rental of Sims Crane's equipment, in clear violation of the Preliminary Injunction. Plaintiff now asserts that Defendants should be held

---

[3] The term "market area" is not otherwise defined in the Agreement.

in civil contempt for repeatedly violating the Court's Preliminary Injunction. As sanctions for alleged violations, Plaintiff requests that the Court order (1) the disgorgement to Plaintiff of all past and future profits arising from any Sims HD contracts for which Jenkins furnished a quote or provided any other assistance in violation of the Preliminary Injunction; (2) an award of attorney's fees; and (3) an extension of the non-compete period for two years from the date of the contempt finding (Doc. 54 at 11). Plaintiff also requests limited discovery regarding the disgorgement of profits; specifically, discovery regarding the extent to which Defendants profited from their violations of the injunction.

At the hearing held on January 27, 2020, Defendants conceded that they had technically violated the Preliminary Injunction but argued that the violations were minimal, non-substantive, and were no longer occurring. Moreover, both sides agreed that any remedies are more properly determined after trial, currently set for May 2020.

## DISCUSSION

"District courts have inherent power to enforce compliance with their lawful orders through civil contempt." *Nat'l Union Fire Ins. Co. of Pittsburgh v. Olympia Holding Corp.*, 140 F. App'x 860, 862-63 (11th Cir. 2005)[4] (quotation omitted). "Where an injunction is ordered, the parties are bound to obey it and are under an obligation to take steps to [e]nsure that violations of the order, even inadvertent, do not occur. … An injunctive order is an extraordinary writ, enforceable by the power of contempt." *Smith Barney, Inc. v. Hyland*, 969 F. Supp. 719, 722 (M.D. Fla. 1997); *see also Alderwoods Grp., Inc. v. Garcia*, 682 F.3d 958, 970 (11th Cir. 2012). "A finding of civil contempt must be based upon clear and convincing

---

[4] Unpublished opinions of the Eleventh Circuit Court of Appeals are not considered binding precedent; however, they may be cited as persuasive authority. 11th Cir. R. 36-2.

evidence that: 1) the allegedly violated order was valid and lawful; 2) the order was clear, definite, and unambiguous; and 3) the alleged violator had the ability to comply with the order." *Zow v. Regions Fin. Corp.*, 595 F. App'x 887, 889 (11th Cir. 2014) (quotation omitted). Upon a finding of civil contempt, district courts have broad discretion in fashioning appropriate sanctions. *Abbott Labs. v. Unlimited Beverages, Inc.*, 218 F.3d 1238, 1242 (11th Cir. 2000); *Howard Johnson Co. v. Khimani*, 892 F.2d 1512, 1519 (11th Cir. 1990) (citing *United States v. United Mine Workers of Am.*, 330 U.S. 258, 303-04 (1947)). "[S]anctions in civil contempt proceedings *may* be employed for either or both of two purposes: to coerce the [offender] into compliance with the court's order, and to compensate the complainant for losses sustained." *Tom James Co. v. Morgan*, 141 F. App'x 894, 899 (11th Cir. 2005) (alternation and emphasis in the original) (quoting *Local 28, Sheet Metal Workers' Int'l Ass'n v. EEOC*, 478 U.S. 421, 443 (1986)); *see also United States v. McCorkle*, 321 F.3d 1292, 1298-99 (11th Cir. 2003).

Here, the Preliminary Injunction's proscriptions are clear, and Plaintiff has shown, through clear and convincing evidence, that all three Defendants violated the Preliminary Injunction. Plaintiff presented evidence of 44 quotes containing price estimates and descriptions of heavy lift and transport services to be provided exclusively by Sims HD, as opposed to merely incidental to the rental of Sims Crane equipment, which were prepared and emailed by Jenkins to Sims HD's Senior Division Manager J.D. Nutting ("Nutting") between the date the Preliminary Injunction was issued on July 31, 2019, and November 5, 2019, the last date of documents in Defendants' most recent production. *See* Doc. 54 at 6; Doc. 55-5/S59-4. Examples of the 44 quotes include the following. On August 1, 2019,

5

Jenkins prepared a bid for Sims HD customer World Logistics Consulting on Sims HD's letterhead and supplied it to Nutting for the following services:

> Sims HD will mobilize crews and equipment …. Sims HD will cut loose … transformer from railcar, clean and release car. Sims HD will transload from railcar to our trailer, transport 10 miles or less and offload to foundation.

Doc. 55-1/S59. On September 19, 2019, Jenkins sent an email to Nutting with the subject line "bnsf quote" providing Nutting with an estimate bid for work to be provided by Sims HD for customer BNSF Logistics as follows:

> Sims HD will mobilize to Jax Port Blount Island where it will be loaded by others (1) … transformer to our OTR trailer. Sims HD will transport transformer to … Orlando … and offload transformer to pad. Sims HD will offload accessory loads with 12K forklift.

Doc. 55-2/S59-1. On September 27, 2019, Jenkins provided Nutting a Sims HD quote for customer Detroit Diesel-Allison describing services to be provided as follows:

> Crane will setup in road way at the plant[.] Lift and remove generators and enclosure, unload generators at customer's yard. Install through door opening, customer to re-install radiators. 4-man crew on site for 3 days. Rigging crew on site in Dade City. Remove (2) Gen Sets from Building-Include fuel tanks, mufflers, radiators and frame work. Others are responsible for removal of all fuels, antifreeze and electric disconnect.

Doc. 55-3/S59-2. Plaintiff asserts, and Defendants do not contest, that all such documents drafted by Jenkins were emailed from his Sims Crane account during the course of regular business hours while being compensated by Sims Crane.

Notably absent from these quotes are the cost of rental of Sims Crane equipment. Moreover, Defendants do not argue that these violations of the Preliminary Injunction did not occur or do not constitute violations. Instead, Defendants argue that Jenkins' role in preparing Sims HD quotes was "clerical or administrative." Doc. 60 at 3; Doc. 60-2 at ¶ 4. More specifically, Nutting explained Jenkins' role as follows:

> I have the responsibility for quoting and bidding heavy hauling services provided by Sims HD. I have extensive experience in both heavy hauling and crane rental services. From time to time I have provided Casey Jenkins with all of the information necessary to input into the computer system to generate a Sims HD quote that is ancillary to a project involving the use of Sims Crane's services. I alone determine the pricing for Sims HD's services, and Mr. Jenkins' role is clerical or administrative.

Decl. of J.R. Nutting, Doc. 60-2 at ¶ 4. Defendants' assertion that the violations are excusable as minimal and non-substantive is unavailing. The Preliminary Injunction unambiguously enjoins Jenkins "from assisting Defendant Sims HD, LLC in the business of transporting, moving, and lifting oversized components and equipment, including the bidding or quoting process or providing logistical support…." (Doc. 38 at 13). Jenkins unequivocally assisted Sims HD in their bidding and/or quoting process.

The question then becomes the appropriate sanctions to impose. In determining the relief to impose, the Court must "consider the character and magnitude of the harm" and "the probable effectiveness of any suggested sanction bringing about the result desired." *United Mine Workers*, 330 U.S. at 304. Remedial sanctions are imposed to repair the injured party by restoring it to the position the party would have held had the Court's order been obeyed. *Flagler v. Housing Auth.*, No. 6:90-cv-878-Orl-19, 2008 WL 785937, at *4 (M.D. Fla. Mar. 20, 2008) (citations omitted). In a factually analogous case, the Eleventh Circuit found sanctions of attorneys' fees and costs and disgorgement of profits appropriate for civil contempt. *See Tom James Co.*, 141 F. App'x at 899 (involving violation of consent injunction in non-compete covenant action); *see also Talk Fusion, Inc. v. Burling*, No. 8:16-cv-1616-T-30JSS, 2016 WL 4527361, at *4 (M.D. Fla. Aug. 10, 2016) (report and recommendation in non-solicitation agreement action recommending civil contempt sanctions of attorneys' fees incurred in prosecuting violations of permanent injunction, disgorgement of commissions earned from

7

violations of permanent injunction, and coercive fine[5]), *adopted* 2016 WL 4507918 (M.D. Fla. Aug. 29, 2016).

Initially, the Court finds that Plaintiff should not have to bear the expense associated with forcing Defendants' compliance with this Court's Preliminary Injunction. As such, an award of attorneys' fees is appropriate provided they are "limited to those [fees] reasonably and necessarily incurred in the attempt to enforce compliance" with the injunction. *Abbott Labs.*, 218 F.3d at 1242 (granting award of attorneys' fees along with disgorgement as remedies for civil contempt).

Further, disgorgement of any profits arising from any Sims HD contracts for which Jenkins furnished a quote or provided any other assistance in violation of the Preliminary Injunction and upon which contract Plaintiff also bid is appropriate as it will serve both to compensate Plaintiff for injuries sustained from Defendants' misconduct and to coerce Defendants to comply with the injunctive order. *Local 28*, 478 U.S. at 443 (purpose of civil contempt sanctions is to compensate the plaintiff for losses sustained and to coerce the defendant's compliance); *see also Abbott Labs.*, 218 F.3d at 1242 (affirming contempt sanction of disgorgement of profits obtained in violation of an injunction in trademark dispute). Moreover, Plaintiff should be permitted to take discovery concerning the extent to which Defendants profited from their violations of the injunction.

Finally, extension of the non-compete period to two years from the date of the Court's finding of contempt is warranted to give Plaintiff the benefit of its bargain. *See Brown & Brown, Inc. v. Muhammad Munawar Ali*, 592 F. Supp. 2d 1009, 1050 (N.D. Ill. 2009) (extending two-

---

[5] Plaintiff does not seek a coercive fine, and the Court does not find a coercive fine warranted here.

year restrictive covenant to run from the date of contempt finding); *New Horizons Computer Learning Ctrs., Inc. v. Silicon Valley Training Partners, Inc.*, No. 2:02CV459FTM29SPC, 2003 WL 23654790 (M.D. Fla. Nov. 12, 2003) (extending injunction's term for period of non-compliance). In fact, an extension for any period of non-compliance is contemplated by and included in the Agreement itself. *See* Doc. 1-1 at ¶ 3.

The undersigned, however, in recommending sanctions must consider the fact that the injunction is preliminary in nature and subject to findings at trial, which will determine the permanency of the proscriptions set forth therein. *Cf. Tom James Co.*, 141 F. App'x at 896 (sanctions for violations of consent injunction entered pursuant to settlement of the case); *Talk Fusion*, 2016 WL 4527361, at *2 (sanctions for violations of permanent injunction). So, while there have been violations of the Court's Preliminary Injunction that warrant sanctions, some of the recommended sanctions must necessarily be finalized subsequent to resolution of Plaintiff's claims at trial. For example, if Plaintiff's claims fail, disgorgement to Plaintiff of all past and future profits arising from any Sims HD contracts for which Jenkins furnished a quote or provided any other assistance in violation of the Preliminary Injunction would no longer be warranted as Plaintiff did not actually sustain those losses. As such, the Court recommends entry of an order requiring Defendants to: (1) pay Plaintiff's reasonable attorneys' fees incurred in prosecuting Defendants' violations; (2) disgorge profits, as proven at trial if trial in this matter results in a verdict in favor of Plaintiff on its claims, arising from any Sims HD contracts for which Jenkins furnished a quote or provided any other assistance in violation of the Preliminary Injunction and upon which contract Plaintiff also bid; and (3) extend the non-compete period to two (2) years from the date of the contempt finding if trial in this matter results in a verdict in favor of Plaintiff on its claims.

Accordingly, it is hereby

**RECOMMENDED**:

The Court enter an order (1) holding Defendants in civil contempt and (2) imposing the following sanctions against Defendants for their violations of the Preliminary Injunction:

(a) Awarding Plaintiff reasonable attorneys' fees incurred in prosecuting Defendants' violations of the Preliminary Injunction;

(b) Requiring Defendants to disgorge any profits arising from any Sims HD contracts for which Jenkins furnished a quote or provided any other assistance in violation of the Preliminary Injunction and upon which contract Plaintiff also bid, which amounts shall be determined during the course of trial and the award of which shall be dependent on Plaintiff prevailing on its claims;

(c) Allow Plaintiff to conduct discovery concerning the extent to which Defendants profited from their violations of the Preliminary Injunction; and

(d) Extending the non-compete period for two (2) years from the date of the contempt finding if trial in this matter results in a verdict in favor of Plaintiff on its claims.

**IT IS SO REPORTED** in Tampa, Florida, on April 1, 2020.

SEAN P. FLYNN
UNITED STATES MAGISTRATE JUDGE

## NOTICE TO PARTIES

A party has fourteen days from this date to file written objections to the Report and Recommendation's factual findings and legal conclusions. Fed. R. Civ. P. 72(b)(2). A party's failure to serve and file specific objections to the proposed findings and recommendations alters the scope of review by the District Judge and the United States Court of Appeals for the Eleventh Circuit and waives that party's right to challenge anything to which no specific objection was made. *See* 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b)(3); 11th Cir. R. 3-1; Local Rule 6.02, M.D. Fla.


cc: Hon. Charlene E. Honeywell