UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

EDWARDS MOVING & RIGGING,
INC.,

       Plaintiff,

v.                                       Case No: 8:19-cv-1004-T-36SPF

CASEY JENKINS, SIMS CRANE &
EQUIPMENT CO., and SIMS HD, LLC,

       Defendants.
_____/

## O R D E R

This cause comes before the Court upon the Report & Recommendation filed by United States Magistrate Judge Sean P. Flynn on April 1, 2020 (the "R&R"). (Doc. 81). Therein, Magistrate Judge Flynn recommends that the Court enter an order: (1) holding Casey Jenkins ("Jenkins"), Sims Crane & Equipment Co. ("Sims Crane"), and Sims HD, LLC ("Sims HD" and, together with Jenkins and Sims Crane, "Defendants") in civil contempt; and (2) imposing certain sanctions against Defendants for violating the preliminary injunction. *Id.* at 10.

All parties were furnished copies of the R&R and were afforded the opportunity to file objections, pursuant to 28 U.S.C. § 636(b)(1). Defendants timely objected to the R&R (the "Objection"), (Doc. 86), to which Edwards Moving & Rigging, Inc. ("Plaintiff") responded (the "Response"), (Doc. 34). Upon consideration of the R&R, the Objection, and the Response, and upon this Court's independent examination of the file, it is determined that the R&R should be adopted and the Objection should be overruled.

## I.   BACKGROUND

Plaintiff is in the business of transporting, moving, and lifting over-sized components and equipment. (Doc. 1 ¶10). Plaintiff performs heavy haul and rigging jobs across several industries, such as the power plant, construction, rail, and automotive industries. *Id.* Plaintiff hired Jenkins in August of 2016 as Regional Sales Manager. *Id.* at ¶12. Through this position, Jenkins had access to Plaintiff's customer contracts, customer revenue information, equipment book, and other confidential business information. *Id.* Plaintiff and Jenkins entered into a Non-Competition, Non-Solicitation, and Disclosure Agreement (the "Agreement"). The Agreement contained a non-competition covenant.[1] *Id.* at ¶13. In April of 2019, Jenkins resigned from his position with Plaintiff and accepted a job with Sims Crane, a crane rental company that rents cranes and heavy

---

[1] This covenant provides:

> **A.  <u>Non-Competition.</u>** Employee agrees that while Employee is employed by Employer and during a period of two (2) years immediately following the termination of his employment with the Employer for any reason whatsoever, (the Term), he shall not, within Employer's market area, (the "Territory"), engage in any of the following activities:
>
> (1) Directly or indirectly enter into the employ or render any service to or act in concert with any person, partnership, corporation or other entity engaged in rendering any service being conducted or rendered by Employer at the time of the termination; or
>
> (2) Directly or indirectly engage in any such competitive business or render any such service on his own account; or
>
> (3) Become interested in any such competitive business or service directly or indirectly as an individual, partner, member, director, officer, principal, agent, employee, or creditor.

(Doc. 1-1 at 1).

equipment. *Id.* at ¶¶15–16; (Doc. 22-2 ¶¶3–4). Sims HD, a competitor of Plaintiff that provides specialized rigging and machinery moving services, is affiliated with, but separate from, Sims Crane. (Docs. 1 ¶16; 22-2 ¶¶2, 4). Sims Crane and Sims HD have "some, but not all, overlapping ownership." (Doc. 22-2 ¶2). Following Jenkins' resignation, Plaintiff advised Sims Crane and Sims HD of the Agreement and demanded that Defendants cease and desist in accordance with the Agreement. (Doc. 1 ¶18). This action followed, in which Plaintiff sues Jenkins for breach of contract and sues Sims Crane and Sims HD for tortious interference. *Id.* at ¶¶19–28.

On July 31, 2019, the Court granted-in-part Plaintiff's motion for a preliminary injunction. (Doc. 38 at 13). Specifically, the Court: (1) enjoined Jenkins from working for Sims HD through and including April 17, 2021; (2) enjoined Sims HD from employing Jenkins through and including April 17, 2021; and (3) enjoined Jenkins "from assisting Defendant Sims HD, LLC in the business of transporting, moving, and lifting oversized components and equipment, including the bidding or quoting process or providing logistical support, through and including April 17, 2021," but this enjoinment did not prohibit Jenkins from "bidding or quoting Defendant Sims Crane & Equipment Co.'s rental equipment to Defendant Sims HD, LLC or its customers or providing logistical support for hauling" Sims Crane's rental cranes or equipment (the "Preliminary Injunction"). *Id.*

Following receipt of documents produced in discovery, Plaintiff moved for an order to show cause as to why the Court should not hold Defendants in civil contempt for repeatedly violating the Preliminary Injunction (the "Motion for Order to Show Cause"). (Doc. 54 at 1). Plaintiff provided evidence under seal in support. *E.g.*, (Doc. S59). Plaintiff asserted that, in blatant disregard of the Preliminary Injunction, Jenkins continually assisted in preparing quotes for Sims HD's "transporting, moving and lifting" business under the auspices of his position at Sims Crane.

(Doc. 54 at 3) (internal quotation marks omitted). Plaintiff further claimed that these quotes were exclusively bids for Sims HD's hauling and transportation services, not simply the rental of Sims Crane's equipment. *Id.* Accordingly, as sanctions for violating the Preliminary Injunction, Plaintiff moved the Court to order: (1) the disgorgement to Plaintiff of all past and future profits stemming from any Sims HD contract for which Jenkins furnished a quote or provided other assistance, in violation of the Preliminary Injunction; (2) an award of attorneys' fees to Plaintiff; and (3) an extension of the non-compete period for two years from the date of the contempt finding. *Id.* at 11.

Upon consideration of the Motion for Order to Show Cause, Defendants' response thereto, Plaintiff's reply, Defendants' sur-reply, and the parties' arguments during a show cause hearing, Magistrate Judge Flynn issued the R&R, in which he recommended that the Court enter an order: (1) holding Defendants in civil contempt; and (2) imposing the following sanctions against Defendants for violating the Preliminary Injunction: (a) awarding Plaintiff reasonable attorneys' fees incurred in prosecuting Defendants' violations of the Preliminary Injunction; (b) requiring Defendants to disgorge any profits arising from any Sims HD contracts for which Jenkins furnished a quote or provided other assistance, in violation of the Preliminary Injunction, and upon which contract Plaintiff also bid, with such amounts to be determined during trial and the award of which to be dependent on Plaintiff prevailing on its claims at trial; (c) permitting Plaintiff to conduct discovery on the extent to which Defendants profited from violating the Preliminary Injunction; and (d) extending the non-compete period for two years after the date of the contempt finding if Plaintiff achieves a verdict in its favor on its claims at trial. (Doc. 81 at 10).

## II.    LEGAL STANDARD

When a party makes a timely and specific objection to a magistrate judge's report and recommendation, the district judge "shall make a *de novo* determination of those portions of the

report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1)(C). With regard to those portions of the report and recommendation not objected to, the district judge applies a clearly erroneous standard of review. *See Gropp v. United Airlines, Inc.*, 817 F. Supp. 1558, 1562 (M.D. Fla. 1993) (Kovachevich, J.). The district judge may accept, reject, or modify, in whole or in part, the magistrate judge's findings or recommendations. 28 U.S.C. § 636(b)(1)(C). The district judge may also receive additional evidence or recommit the matter to the magistrate judge with instructions. *Id*; Local R. M.D. Fla. 6.02(a).

## III.   ANALYSIS

Defendants offer several objections to the R&R, which the Court will address.

### A. The Magistrate Judge Correctly Interpreted the Preliminary Injunction and Considered Defendants' Declarations

Defendants object to the magistrate judge's recommendation for the Court to hold Defendants in contempt and award Plaintiff reasonable attorneys' fees incurred in prosecuting Defendants' violations of the Preliminary Injunction because this finding hinges upon a "hyper-technical reading" of the Preliminary Injunction. (Doc. 86 at 3). Specifically, Defendants argue that Jenkins merely performed a "clerical or administrative" role that could be deemed as providing "assistance" to Sims HD only under a "hyper-technical reading" of the Preliminary Injunction. *Id.* In support, Defendants emphasize that Jenkins did not determine *pricing* for any of the Sims HD quotes, which Defendants define as the "fundamental competitive concern" addressed by the Preliminary Injunction. *Id.* Relatedly, Defendants also assert that the R&R "gives short shrift" to the declarations provided by Defendants regarding "these issues." *Id.* The Court construes these arguments collectively as an objection to the magistrate judge's interpretation of the Preliminary Injunction and his consideration, or alleged lack thereof, of Defendants' declarations.  For the reasons set forth below, this objection will be overruled.

5

### i. Preliminary Injunction and the Arguments and Evidence Before the Magistrate Judge

In issuing the Preliminary Injunction, the court recognized that Sims HD competes with Plaintiff, but rejected Plaintiff's argument that Sims Crane is a competitor of Plaintiff. (Doc. 38 at 5–6, 9). Although it declined to preliminary enjoin Jenkins from working for Sims Crane, the court preliminarily enjoined Jenkins from providing assistance to Sims HD as follows:

> Defendant Casey Jenkins is **ENJOINED** from assisting Defendant Sims HD, LLC in the business of transporting, moving, and lifting oversized components and equipment, including the bidding or quoting process or providing logistical support, through and including April 17, 2021. This does not, however, prohibit Defendant Casey Jenkins from bidding or quoting Defendant Sims Crane & Equipment Co.'s rental equipment to Defendant Sims HD, LLC or its customers or providing logistical support for hauling Defendant Sims Crane & Equipment Co.'s rental cranes or equipment.

*Id.* at 13 (emphasis in original).

Therefore, the preliminary injunction clearly enjoins Jenkins from assisting Sims HD in "transporting, moving, and lifting oversized components and equipment" through April 17, 2021, including providing assistance in the quoting or bidding process, but does not proscribe Jenkins from bidding or quoting Sims Crane's rental equipment to Sims HD or its customers or providing logistical support for hauling Sims Crane's rental cranes or equipment.

In support of the Motion for Order to Show Cause, Plaintiff provided, under seal, evidence showing that Jenkins prepared and e-mailed to J.D. Nutting ("Nutting"), Sims HD's Senior Division Manager, forty-four quotes containing price estimates and descriptions of heavily lift and transport services to be provided exclusively by Sims HD, rather than incidental to the rental of Sims Crane's equipment, between the court's entry of the Preliminary Injunction on July 31, 2019, and November 5, 2019. *E.g.* (Doc. S59). This evidence included: specific examples of quotes, which apparently were "exclusively bids" for Sims HD's service, that Jenkins prepared on Sims

6

HD letterhead and supplied to Nutting for Sims HD customers; a summary timeline of quotes prepared by Jenkins; an "Employee IT Request Form"; e-mails regarding customer requests for quotes or services that Nutting forwarded to Jenkins, and a Sims HD presentation sent to Nutting by Jenkins. *E.g.*, (Docs. S59, S59-1, S59-4, S59-6, S59-7, S59-8).

In one example, Jenkins e-mailed a quote on Sims HD letterhead to Nutting on August 1, 2019, the day after the court entered the Preliminary Injunction. (Doc. S59 at 2–4). The provided services for the customer are described as: "Sims HD will mobilize crews and equipment . . . Sims HD will cut loose . . . transformer from railcar, clean and release car . . . Sims HD will transload from railcar to our trailer, transport 10 miles or less and offload to foundation." *Id.* at 3. Plaintiff described these documents as showing Jenkins' preparation of a bid,[2] and his provision of the bid to Nutting, for a Sims HD customer. (Doc. 54 at 4). Plaintiff highlighted that this bid did not involve a crane rental or Sims Crane. *Id.* By way of another example, Jenkins sent an e-mail with the subject line "bnsf quote" to Nutting on September 19, 2019, which provided Nutting with a quote for a customer on Sims HD's letterhead. (Doc. S59-1 at 2–4). The provided services are described as: "Sims HD will mobilize to Jax Port Blount Island where it will be loaded by others . . . transformer to our OTR trailer. Sims HD will transport transformer to . . . Orlando . . . and offload transformer to pad. Sims HD will offload accessory loads with 12K forklift." *Id.* at 3. Plaintiff asserted this documentation demonstrated that Jenkins provided Nutting with an estimate

---

[2] Both the Motion for Order to Show Cause and the R&R refer to the document as a "bid," even though Jenkins refers to the document as a "quote." Regardless, as noted above, the Preliminary Injunction enjoins Jenkins from providing assistance to Sims HD in the bidding or quoting process. (Doc. 38 at 13).

detailing Sims HD's bid on a job, with the described services to be provided by Sims HD without any mention of Sims Crane.[3] (Doc. 54 at 4–5).

Plaintiff argued that each Defendant violated the Preliminary Injunction and should be ordered to show cause. *Id.* at 9–10. Plaintiff claimed that Jenkins violated the Preliminary Injunction by participating "directly and extensively" with Sims HD's moving, transporting, and lifting business, as evidenced by the quotes. *Id.* at 9. Plaintiff further argued that Sims HD violated the Preliminary Injunction by "repeatedly soliciting" Jenkins' assistance with this business, as Nutting frequently forwarded customer requests for quotes or services to Jenkins, which Jenkins provided. *Id.* According to Plaintiff, Sims HD benefited each time Jenkins violated the Preliminary Injunction "by preparing a prohibited quote." *Id.* Finally, Plaintiff argued that Sims Crane aided and abetted Jenkins and Sims HD's violations of the Preliminary Injunction because Jenkins used his Sims Crane e-mail account during the regular course of business, during which time Sims Crane compensated him, "to prepare Sims HD's bids" in violation of the Preliminary Injunction. *Id.* at 10.

Providing the declarations of Jenkins and Nutting in opposition to the Motion for Order to Show Cause, Defendants argued that Plaintiff failed to address the extent to which it suffered any

---

[3] As a third example, Jenkins e-mailed a quote on Sims HD letterhead to Nutting on September 27, 2019. (Doc. S59-2 at 2–4). The services for the customer are described as follows:

> Crane will setup in road way at the plant . . . Lift and remove generators and enclosure, unload generator at customer's yard. Install through door opening, customer to re-install radiators. 4-man crew on site for 3 days. Rigging crew on site in Dade City. Remove (2) Gen Sets from Building-Include fuel tanks, mufflers, radiators and frame work. Others are responsible for removal of all fuels, antifreeze and electric disconnect.

*Id.* at 3. Plaintiff asserted that document "describes and estimates the cost of services to be provided by Sims HD, not the cost of rental of Sims Crane equipment." (Doc. 54 at 5).

damages as a result of Defendants' actions, even if Defendants violated the Preliminary Injunction Order. (Doc. 60 at 5). Significantly, Defendants did not dispute the existence of the provided quotes. As articulated during the subsequent show cause hearing, Defendants also did not challenge the Preliminary Injunction as unclear or ambiguous. Rather, Defendants downplayed the extent of Jenkins' involvement and emphasized the purported "ancillary" nature of the quotes to Sims Crane projects. *See id.* at 3. Indeed, Jenkins admitted in his declaration that, in his work for Sims Crane, he has "been asked from time to time to input elements of a Sims HD quote that are ancillary to a project involving the use of Sims Crane's cranes and equipment." (Doc. 60-1 at 2). Jenkins explained that Nutting would provide him with the Sims HD information required for entry into the computer system to generate the quote for Sims HD. *Id.* Jenkins stated that he did not make an independent evaluation of pricing for Sims HD's services and described his work as "clerical or administrative." *Id.* Similarly, Nutting, in relevant part, confirmed this account, explaining that he provided Jenkins "from time to time" with the information needed to generate a Sims HD quote "ancillary" to a project involving the use of Sims Crane's cranes and equipment. (Doc. 60-2 at 2). Nutting stated that he determines the pricing for Sims HD's services, whereas Jenkins prepares the quote for Sims Crane's services. *Id.* Echoing Jenkins' declaration, Nutting described Jenkins' role as "clerical or administrative." *Id.*[4]

In the R&R, the magistrate judge found that Plaintiff had demonstrated, through clear and convincing evidence, that Defendants violated the Preliminary Injunction. (Doc. 81 at 5). He

---

[4] Plaintiff also provided evidence under seal with its reply, such as deposition transcripts, e-mails, and other documentation. (Doc. S72). Plaintiff contended that the depositions generally contradicted Defendants' declarations and provided "additional compelling evidence" that Defendants violated the Preliminary Injunction. (Doc. 64). Although the magistrate judge found the quotes to be sufficient evidence of Defendants' violations in the R&R, and thus did not devote analysis to this additional evidence in the R&R, this additional evidence was discussed during the show cause hearing.

highlighted Plaintiff's evidence of forty-four quotes, including the quotes mentioned above, and noted that the cost of rental of Sims Crane equipment was absent from the quotes. *Id.* at 5–6. Citing Nutting's declaration, the magistrate judge recognized that Defendants had argued merely that Jenkins' role was clerical or administrative, not that that the described conduct did not violate the Preliminary Injunction. *Id.* at 6. He rejected Defendants' assertion that these violations were excusable as minimal or non-substantive, recognizing that Jenkins "unequivocally assisted Sims HD in their bidding and/or quoting process" in violation of the plain language of the Preliminary Injunction. *Id.*

### ii.  Objection

Defendants' objection to the magistrate judge's contempt finding on the basis of Jenkins' "clerical or administrative" role constituting his provision of "assistance" under the Preliminary Injunction only upon a "hyper-technical reading" fails. The Preliminary Injunction clearly and unambiguously proscribes Jenkins "from assisting Defendant Sims HD, LLC in the business of transporting, moving, and lifting oversized components and equipment, including the bidding or quoting process or providing logistical support . . . ." (Doc. 38 at 13). Despite Defendants' efforts to shift the Court's focus to whether Jenkins determined the pricing for any of the subject Sims HD quotes, this language shows that the Preliminary Injunction's scope is not confined to pricing. Defendants' assertion that pricing served as the "fundamental competitive concern addressed by the Preliminary Injunction" is meritless; in entering the Preliminary Injunction, the court chiefly focused on the extent to which Sims HD and Sims Crane compete with Plaintiff and the extent to which Sims Crane and Sims HD constitute separate entities, which involved an analysis of services provided by each entity, Sims Crane's purpose in hiring Jenkins, and the structure and personnel

of Sims HD and Sims Crane.[5] *Id.* at 4–12. Additionally, the court explained that enjoining Jenkins from assisting Sims HD in moving, transporting, or lifting oversized equipment and components addressed any concern caused by Sims Crane's hiring of Jenkins for the claimed purpose, in part, of giving logistical support for crane rental and hauling services, including routing determinations, local permitting, and transportation support. *Id.* at 8.

Regardless of whether Jenkins' role was "clerical or administrative," his conduct violated the plain language of the Preliminary Injunction. The quotes provided by Plaintiff, which Defendants do not challenge, show that Jenkins assisted Sims HD in the bidding or quoting process. Jenkins provided Nutting with quotes on Sims HD's letterhead for services for Sims HD to perform, which were unrelated to any bidding or quoting of Sims Crane's rental equipment to Sims HD or its customers or a provision of logistical support for hauling Sims Crane's rental cranes or equipment.

Although describing Jenkins' work as "clerical or administrative," the declarations of both Jenkins and Nutting confirm that Jenkins provided assistance to Sims HD in the bidding or quoting process. Defendants conceded during the hearing on the Motion for Order to Show Cause that "minimal violations" occurred under a "broad" or "direct" reading of the Preliminary Injunction. But the Court need look only to the plain language of the Preliminary Injunction, together with the evidence, to discern the violations. Defendants fail to offer any persuasive basis for why Jenkins' "clerical or administrative" role warrants a departure from enforcing the Preliminary Injunction's

---

[5] Further, in entering his Report and Recommendation on Plaintiff's Motion for Preliminary Injunction, the magistrate judge addressed, among other things, the reasonableness of the Agreement's non-competition covenant, which involved an examination of Plaintiff's claimed loss of goodwill, valuable clientele, and reputation, as well as Plaintiff's job estimation methodology for calculating bids and completing hauling jobs. (Doc. 29 at 3–8).

terms. Defendants' argument invites the Court to ignore the plain language of the Preliminary Injunction. The Court declines this invitation.[6]

Defendants' assertion that the R&R gives "short shrift" to Defendants' declarations on the issues of Jenkins' "clerical or administrative" role and his lack of involvement in pricing likewise falls short. Both Jenkins and Nutting testified in their declarations that Jenkins did not make any determination regarding pricing and that his role was merely "clerical or administrative" which Defendants relied upon in opposing the Motion for Order to Show Cause. The magistrate judge explicitly addressed these contentions in the R&R and even quoted Nutting's declaration to capture Jenkins' specified role, which included Nutting's assertion that he handled pricing. (Doc. 81 at 6–7). However, the magistrate judge rejected Defendants' argument that Jenkins' minimal role excused any violations—an argument that Defendants recycle in objecting to the R&R. *Id.* at 7. The Court has already explained that Defendants' pricing argument is unpersuasive. Defendants fail to offer any cogent basis for why the magistrate judge should have afforded further attention to the declarations on these issues.

In sum, the magistrate judge correctly examined and relied upon the plain language of the Preliminary Injunction and gave proper attention to Defendants' declarations. As such, this objection is due to be overruled.

### B.  The Court Declines to Defer Ruling on the R&R

---

[6] Defendants do challenge Magistrate Judge Flynn's conclusion that Sims Crane and Sims HD violated the Preliminary Injunction. The Court does not find that Magistrate Judge Flynn clearly erred in reaching this conclusion, as the Court is not left "with the definite and firm conviction that a mistake has been committed." *Coggin v. C.I.R.*, 71 F.3d 855, 860 (11th Cir. 1996).

Defendants also argue that, given the findings in the R&R and the evidence considered, or not considered, the Court should defer ruling on the R&R until after the trial in the upcoming action. (Doc. 82 at 2). Upon review, this objection is due to be overruled.

After finding that Jenkins unequivocally assisted Sims HD in its bidding or quoting process, the magistrate judge considered the appropriate sanctions to impose on Defendants. (Doc. 81 at 7). He recognized *Tom James Company v. Morgan*, 141 F. App'x 894 (11th Cir. 2005) as a factually analogous case, in which the Eleventh Circuit held an award of attorneys' fees and disgorgement of profits as appropriate sanctions for civil contempt. *Id.* He also cited *Talk Fusion, Inc. v. Burling*, No. 8:16-cv-1616-T-30JSS, 2016 WL 4527361 (M.D. Fla. Aug. 10, 2016) (Sneed, Mag.), *report and recommendation adopted*, 8:16-cv-1616-T-30JSS, 2016 WL 4507918, at *1 (M.D. Fla. Aug. 29, 2016) (Moody, J.), as another case involving attorneys' fees and disgorgement as civil contempt sanctions. *Id.* at 7–8. The magistrate judge found that Plaintiff should not bear the expense associated with forcing Defendants' compliance with the Preliminary Injunction, *id.* at 8, and reasoned that an award of attorneys' fees to Plaintiff was appropriate, as long as the fees are limited to those fees necessarily and reasonably incurred in enforcing the Preliminary Injunction. *Id.* Additionally, the magistrate judge found that disgorgement of any profits from Sims HD's contracts for which Jenkins furnished a quote or provided assistance in violation of the Preliminary Injunction and upon which contract Plaintiff also bid would appropriately compensate Plaintiff's injuries and coerce Defendants to comply with the Preliminary Injunction. *Id.* To that end, the magistrate judge recommended that the Court allow Plaintiff to take discovery regarding the extent to which Defendants profited from their violations of the Preliminary Injunction. *Id.* He also recommended the extension of the non-compete period to give Plaintiff its benefit of the bargain. *Id.* Finally, relying on *Thomas James* and *Talk Fusion* to emphasize that he must consider

that the injunctive relief is preliminary in nature and subject to findings at trial, he explained that the recommended sanctions must necessarily be finalized subsequent to resolution of Plaintiff's claims at trial. *Id.* at 9.

Defendants now ask the Court to defer ruling on the R&R, arguing that the magistrate judge erred in recommending that the Court hold Defendants in contempt and award Plaintiff attorneys' fees based on the record before him. (Doc. 86 at 3). Defendants claim that deferring ruling will allow the Court to "make *de novo* determinations on the issues" in the R&R after hearing testimony from witnesses and reviewing documentary evidence that the magistrate judge purportedly did not consider in issuing the R&R. *Id.* at 2. Defendants also seek to distinguish *Tom James* and *Talk Fusion*. *Id.* at 4. Defendants conclude by asserting that courts in "analogous circumstances" have deferred ruling on a report and recommendation until either after trial or until after further hearing on "key issues of fact or law." *Id.*

Because the magistrate judge's recommended sanctions flow from his recommendation for the Court to find Defendants in contempt, upon which Defendants now ask the Court to delay ruling, the Court begins with Defendants' attack on the contempt recommendation. Defendants claim that the magistrate judge erred in recommending a finding of contempt and an award of attorneys' fees "based on the record" before him. *Id.* at 3. Despite arguing that deferring ruling on the R&R will allow the Court to "make *de novo* determinations on the issues" in the R&R after hearing testimony and reviewing documentary evidence not considered by the magistrate judge, Defendants fail to explain why these *de novo* determinations are needed before the Court rules on the contempt finding and attorneys' fees sanction, or how the record is otherwise insufficient to make these rulings. In opposing the Motion for Order to Show Cause, Defendants submitted their arguments through their response in opposition thereto, their sur-reply, and during the show cause

14

hearing. Defendants were afforded the opportunity to present evidence in opposition to the Motion for Order to Show Cause. In fact, Defendants did provide evidence: the declarations of Jenkins and Nutting, each of which demonstrated that Jenkins provided assistance to Sims HD in violation of the Preliminary Injunction. These declarations constituted the only evidence provided by Defendants. As a result, Defendants focused chiefly on the "clerical or administrative" nature of Jenkins' role. In objecting to the R&R, Defendants again rely on Jenkins' role in challenging a "hyper-technical reading" of the Preliminary Injunction.

Thus, given Defendants' evidence and arguments before the magistrate judge, the Court need not await unspecified documentary evidence or the testimony of certain witnesses, including the cross-examination thereof, to consider the magistrate judge's recommendations.   The magistrate judge did not err in recommending a finding of contempt and the imposition of an award of attorneys' fees as a sanction on the record before him. Further, the remaining sanctions that flow from the recommended contempt finding—disgorgement of profits and extension of the non-compete period—are tied to Plaintiff's success at trial. [7] As such, Plaintiff must succeed on its claims at trial, which will involve the submission of evidence and testimony, in order for the Court to enter these sanctions, notwithstanding the Court's adoption of the recommended sanctions in the R&R. Defendants have not offered any persuasive basis for deferring ruling on those sanctions, either.

Defendants' challenge to *Tom James* and *Talk Fusion* likewise fail. Defendants seek to distinguish these cases on the basis that they involved "clear violation[s] of injunction orders

---

[7] Although not explicitly tied to Plaintiff's success at trial, the magistrate judge's recommendation for the Court to allow Plaintiff to conduct discovery concerning the extent to which Defendants profited from their violations of the Preliminary Injunction is related to the disgorgement of profits sanction.

prohibiting the direct solicitation of the former employer's clients or the former employer's employees" and the factual record in this case does not present "the directly and flagrantly competitive circumstances" of those cases. *Id.* at 4. In support, Defendants claim that Plaintiff did not articulate the damages that it allegedly suffered from Defendants' actions. *Id.* However, these distinctions are unavailing. First, the focus of a court's civil contempt inquiry is on whether the alleged contemnor in fact complied with the court order at issue. *Jim Walter Resources, Inc. v. Int'l Union, United Mine Workers of Am.*, 609 F.2d 165, 168 (5th Cir. 1980);[8] *Howard Johnson Co., Inc. v. Khimani*, 892 F.2d 1512, 1516 (11th Cir. 1990). Indeed, when an injunction is entered, the parties are under an obligation to obey it and ensure that violations, no matter how inadvertent, do not occur. *Smith Barney, Inc. v. Hyland*, 969 F. Supp. 719, 723 (M.D. Fla. 1997) (Kovachevich, C.J.). The magistrate judge found, by clear and convincing evidence, that Defendants did not comply with the Preliminary Injunction, and the Court agrees with his interpretation of the Preliminary Injunction. Because the focus of the inquiry into the resulting civil contempt is on whether Defendants complied with the Preliminary Injunction, any attempt to distinguishes cases based on the severity of the violation fails.[9]

---

[8] In *Bonner v. City of Prichard,* the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981. 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc).

[9] Defendants' argument that the magistrate judge erred in recommending a finding of contempt and an award of attorneys' fees to Plaintiff because Plaintiff failed to articulate its damages is unavailing. First, damages are not a prerequisite to a contempt finding, as "[a] finding of civil contempt must be based upon clear and convincing evidence that: 1) the allegedly violated order was valid and unlawful; 2) the order was clear, definite, and unambiguous; and 3) the alleged violator had the ability to comply with the order." *Zow v. Regions Fin. Corp.*, 595 F. App'x 887, 889 (11th Cir. 2014) (internal quotation marks omitted) (quoting *McGregor v. Chierico*, 206 F.3d 1378, 1383 (11th Cir. 2000)). Further, "an award of attorney's fees to the injured party in a civil contempt case is within the district court's discretion," *Sizzler Family Steak Houses v. W. Sizzlin Steak House, Inc.*, 793 F.2d 1529, 1534 (11th Cir. 1986), and such fees are "limited to those reasonably and necessarily incurred in the attempt to enforce compliance," rather than the damages

Next, although Defendants correctly highlight that *Tom James* and *Talk Fusion* involved violations of injunction orders directed towards a former employee's solicitation, they fail to explain the significance of this distinction. In *Tom James*, the district court entered an injunction that enjoined a former employee of Tom James, a clothing retailer, from "directly or indirectly soliciting, for the sale of clothing and wardrobe accessories of the sort he sold for Tom James, those customers of Tom James as to whom he was paid a sales commission while employed by Tom James" and from directly or indirectly "selling such clothing and wardrobe accessories to any such customers even in the absence of any solicitation." 141 F. App'x at 896 (internal quotation marks and alternations omitted). After Tom James moved for contempt, alleging that the employee had violated the injunction, the district court, in relevant part, found the employee in contempt and ordered the employee to pay nominal damages and attorneys' fees and costs. *Id.* at 897. Although the Eleventh Circuit held the that district court erred in concluding that it lacked the power to award disgorgement of the employee's profits as a civil contempt sanction, it upheld both the district court's contempt finding and, emphasizing the district court's "wide discretion" in awarding fees and costs, the district court's fees and costs award. *Id.* at 897–99.

In *Talk Fusion*, the defendants had served as the plaintiff's sale associates, but the plaintiff had terminated the defendants based on their alleged violation of a non-solicitation agreement. 2016 WL 4527361, at *1. Prior to their termination, the defendants became distributors for another network marketing company named Jeunesse Global. *Id.* The court entered a permanent injunction, which barred the defendants from directly or indirectly, for a period of a year, "soliciting, recruiting or otherwise initiating any further contact or communication" with any associate or customer of

---

that the injured party allegedly sustained, *Abbott Labs. v. Unlimited Beverages, Inc.*, 218 F.3d 1238, 1242 (11th Cir. 2000). As explained below, while the Court will order Defendants to pay Plaintiff's incurred attorneys' fees, Plaintiff must prove the fees that it incurred.

the plaintiff, "with the exception of an Associate who was personally sponsored by [the defendants], for the purpose of inviting, recruiting, encouraging, or requesting the Associate to join Jeunesse Global or any other network marketing business." *Id.* at *2. The plaintiff thereafter moved for an order to show cause, seeking an order finding one of the defendants in civil contempt for allegedly violating the permanent injunction by communicating with a sales associate of the plaintiff who was not personally sponsored by the defendants. *Id.* Finding that the defendant violated the injunction, the magistrate judge recommended that the court enter an order holding the defendant in contempt. *Id.* As such, citing *Tom James*, the magistrate judge recommended that the court enter an order directing the defendant to pay the attorneys' fees and costs of the plaintiff, disgorge any commissions or other money earned from her attempt to recruit the associate, and pay a coercive fine.[10] *Id.* at *3–4. The court thereafter adopted the magistrate judge's recommendation. *Talk Fusion,* 2016 WL 4507918, at *1.

While the facts of these cases may not be identical to those of the instant action, the cases are certainly analogous. Like *Tom James* and *Talk Fusion*, an employer has sued a former employee, alleging that the employee violated a covenant arising from the employer's former employment of the employee. Further, like *Tom James* and *Talk Fusion*, the court entered an injunction that enjoined the former employee from engaging in certain conduct relative to his prior employment. Just as in *Tom James* and *Talk Fusion*, the employer now moves to hold the former employee in contempt for violating the injunction. Significantly, both *Tom James* and *Talk Fusion* highlight that a district court enjoys broad discretion to fashion sanctions for civil contempt. Consequently, Defendants' attempts to distinguish these cases fails. The cases are analogous, the

---

[10] Here, Plaintiff did not seek a coercive fine, and the magistrate judge found a coercive fine unwarranted. (Doc. 81 at 8 n.5).

general principles articulated therein are applicable to the instant action, and the magistrate judge's reliance on the cases was not misplaced.

Finally, although Defendants cite cases for the proposition that other courts have deferred ruling on reports and recommendations in similar circumstances, these cases are inapposite. For example, the court's decision in *Protect Key West, Inc. v. Cheney* to delay ruling on a magistrate judge's recommendation to deny the plaintiff's requested preliminary injunction until after trial, at which point the court entered a permanent injunction and denied the report and recommendation as moot, does not persuasively demonstrate that the Court should defer ruling on the instant R&R. 795 F. Supp. 1552, 1554, 1563 n.7 (S.D. Fla. 1992). Similarly, this Court's decision in *United States v. Calderon* to defer ruling, and hold a hearing, on a magistrate judge's report and recommendation regarding the defendants' amended motion to withdraw their guilty pleas as a result of statements made by their prior counsel does not offer a convincing basis for deferring ruling on the R&R, which pertains to Defendants' violations of the Preliminary Injunction and resulting sanctions for such contempt. 782 F. Supp. 601, 602–03 (M.D. Fla. 1992) (Kovachevich, J.). Therefore, because Defendants' cases are unpersuasive and Defendants fail to offer another legitimate basis for deferring ruling on the R&R, the Court declines to defer ruling on the R&R, and this objection is overruled.

### C.  Attorneys' Fees and Disgorgement Discovery

The Court will adopt the R&R and overrule Defendants' objections. In doing so, the Court adopts the magistrate judge's recommendation for imposition of an award of Plaintiff's reasonable attorneys' fees incurred in prosecuting Defendants' violations of the Preliminary Injunction as a sanction for Defendants' contempt. *See Sizzler Family Steak Houses*, 793 F.2d at 1534 ("[A]n award of attorney's fees to the injured party in a civil contempt case is within the district court's

discretion."); *Tom James*, 141 F. App'x at 899 ("We give the district court board discretion in fashioning sanctions for civil contempt."). However, Plaintiff has not provided any evidence of its attorneys' fees incurred in prosecuting Defendants' violations. As previously emphasized, "attorney's fees in a civil contempt proceeding are limited to those reasonably and necessarily incurred in the attempt to enforce compliance." *Abbott Labs.*, 218 F.3d at 242. Thus, although the Court will order Defendant to pay Plaintiff's attorneys' fees incurred in prosecuting Defendants' violations of the Preliminary Injunction, this award is subject to Plaintiff proving the amount of these fees.

Further, in adopting the R&R, the Court adopts the magistrate judge's recommendation to allow Plaintiff to conduct discovery concerning the extent to which Defendants profited from their violations of the Preliminary Injunction. At the final pretrial conference, Plaintiff represented that it had served discovery requests regarding revenue and profits on Defendants on April 2, 2020, the day after the magistrate judge issued the R&R. Plaintiff also explained in its Trial Brief that it had already propounded discovery requests on Defendants to determine the amounts to be disgorged, as recommended in the R&R. (Doc. 85 at 13). Defendants represented during the final pretrial conference that they intended to respond to these requests by May 4, 2020. No motions have been filed regarding this requested discovery.

## IV.   CONCLUSION

Accordingly, it is now **ORDERED**:

1. Defendants' Objections to Report and Recommendation (Doc. 86) are **OVERRULED**.

2. The Report and Recommendation of Magistrate Judge Flynn (Doc. 81) is **ADOPTED**, **CONFIRMED**, and **APPROVED** in all respects and is made a part of this Order for all purposes, including appellate review.

3. Defendants are found to be in **CIVIL CONTEMPT** for violating the Preliminary Injunction entered on July 31, 2019.

4. Plaintiff is entitled to its reasonable attorneys' fees incurred in prosecuting Defendants' violations of the Preliminary Injunction. Defendants shall pay to Plaintiff the attorneys' fees reasonably and necessarily incurred by Plaintiff in prosecuting Defendants' violations of the Preliminary Injunction, if any. As the amount of fees is currently undetermined, Plaintiff shall move, with evidentiary support, for this award of attorneys' fees incurred by Plaintiff in prosecuting Defendants' violations **on or before June 17, 2020**. Defendants shall respond thereto within the time prescribed by the Local Rules.

5. Defendants shall disgorge profits, as proven at trial, if trial in this matter results in a verdict in favor of Plaintiff on its claims, arising from any Sims HD contracts for which Jenkins furnished a quote or provided any other assistance in violation of the Preliminary Injunction and upon which contract Plaintiff also bid. As discussed at the pretrial conference, Plaintiff is allowed to and has propounded discovery concerning the extent to which Defendants profited from their violations of the Preliminary Injunction.

6. The two (2) year non-compete period contained in the Non-Competition, Non-Solicitation, and Non-Disclosure Agreement **is extended for a period of two (2) years from the date of this Order** if the trial in this matter results in a verdict in favor of Plaintiff on its claims to enforce the non-competition restrictive covenant contained in the Agreement.

**DONE AND ORDERED** in Tampa, Florida on May 21, 2020.

Charlene Edwards Honeywell
United States District Judge

Copies to:
Counsel of Record and Unrepresented Parties, if any